UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | |
|---|---|
| CHARLEE ARCHAMBAULT individually and as PERSONAL REPRESNTATIVE OF THE ESTATE OF JACOB ARCHAMBAULT,<br><br>Plaintiff,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA, JOSHUA ATMAN and JAY ROMERO SR., individually and in their official capacity as police officers for the ROSEBUD SIOUX TRIBAL LAW ENFORCEMENT SERVICES, and UNKNOWN SUPERVISORY PERSONNEL OF THE UNITED STATES, individually,<br><br>Defendants. | **COMPLAINT<br>AND<br>DEMAND FOR JURY TRIAL** |

COMES NOW, Plaintiff, Charlee Archambault, individually and as personal representative of the Estate of Jacob Archambault, by and through the undersigned attorneys, and for this complaint against Defendants, alleges as follows:

## **JURISDICTION**

1.      Plaintiff, Charlee Archambault, appears individually and as the Personal Representative of the Estate of the decedent, Jacob Archambault Spotted Tail (hereafter "Archambault"), and is a resident of Todd County, state of South Dakota.

2.      Plaintiff is the surviving parent of Jacob Archambault Spotted Tail and maintains causes of action to recover for decedent's life and decedent's pain and suffering.

1

3.      Jurisdiction is proper pursuant to 42 U.S.C.A. §§ 1981, 1983, 1985 and 1988 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397, 91 S.Ct. 1999, 29 L. Ed. 619 (1971), as well as under the United States Constitution, including its Fourth, Eighth and Fourteenth Amendments, and the Constitution of the State of South Dakota.

4.      At all relevant times herein, the United States, by and through its Department of the Interior, Bureau of Indian Affairs, contracted with the Rosebud Sioux Tribe and its Police Department pursuant to 25 U.S.C. § 5321 et. seq., Indian Self Determination Act, to provide law enforcement services on the Rosebud Sioux Indian Reservation.

5.      At all relevant times herein, the Rosebud Sioux Tribe and its Police Department operated a police department on the Rosebud Sioux Indian Reservation and employed numerous employees who were performing functions under the contract entered into pursuant to 25 U.S.C. § 5321, et. seq., which renders said employees United States Government employees.

6.      At all relevant times herein, Defendants Joshua Michael Atman and Jay Romero Sr. were employed by and acting as police officers under the color of state and federal law for the Rosebud Sioux Tribal Law Enforcement, and both defendants are being sued in their individual and official capacity.

7.      Plaintiff is ignorant of the correct spelling of Defendants' names and will amend this pleading and allege the true name once the true spelling is ascertained.

8.      This action is timely pursuant to 28 U.S.C.A. § 2401(b) in that it was presented to the appropriate agency within two years of accrual.

9.     Plaintiff further invokes this Court's pendent jurisdiction over any and all state law claims and causes of action that derive from the same nucleus of operative facts that give rise to the federally based claims and causes of action pursuant to 28 U.S.C.A. § 1367.

## FACTS

10.     At approximately 5:00 p.m. on January 27, 2019, Officer Atman of the Rosebud Sioux Tribal Law Enforcement heard a law enforcement dispatch for a call regarding a disturbance and learned that Jacob Archambault may be a person of interest and that Archambault was driving a gold SUV.

11.     Officer Atman saw three gold SUVs in rapid succession.

12.     Officer Atman located a gold Chevrolet Tahoe that was parked near the intersection of Hospital Road and Tiny Road.

13.     Officer Atman parked behind the Tahoe, and a female passenger exited the rear driver's side of the Tahoe.

14.     Officer Atman did not talk to the female who exited the Tahoe but activated flashing lights on his patrol car and attempted to stop the Tahoe.

15.     The Tahoe proceeded across Hospital Road onto Tiny Road

16.     The Tahoe did not stop for the patrol car lights and traveled on Tiny Road.

17.     At one point, the Tahoe turned around on Tiny Road, and Officer Atman then knew that Archambault was the driver of the Tahoe.

18.     Archambault drove the Tahoe from Tiny Road for a short distance, merged onto Low Rent Housing Road, and then immediately turned onto North Spotted Tail Lane.

19.     Archambault continued driving to the end of North Spotted Tail Lane and then turned onto an off-road trail that connected North Spotted Tail Lane to Spotted Tail Lane.

3

20.    The shortcut trail, in an incline, parallels the two roads but then makes a sharp turn for the final portion which includes a significant slope.

21.    The presence of accumulated snow on the trail caused the Tahoe to lose traction on the off-road incline between the two paved roads.

22.    Archambault was making a failed attempt to get up the incline when Officer Atman pulled onto the trail behind the Tahoe and blocked the trail to get back onto North Spotted Tail Lane.

23.    Officer Romero drove onto the trail and parked next to Atman's patrol car to make sure the exit on North Spotted Tail Lane was blocked.

24.    Officers Atman and Romero parked their vehicles at the curve in the trail.

25.    The curve in the trail caused the police vehicles to be positioned perpendicular to Archambault's Tahoe.

26.    Officers Atman and Romero exited their vehicles and were standing on the side of their vehicles while Archambault was attempting to drive up the snowy incline.

27.    Archambault was unable to crest the incline on the shortcut and reversed down to make another attempt.

28.    During the process of reversing, Archambault drove past Officer Atman, Atman's vehicle, and Romero; he then stopped near Romero's car before driving forward to make the second attempt.

29.    Archambault again spun out during his second attempt at cresting the incline on the final portion of the shortcut.

30.    Archambault reversed the Tahoe and began backing down the trail to make a third attempt to crest the incline.

4

31.    While backing the Tahoe, Archambault again passed Officer Atman, Atman's vehicle, and Romero, but then the Tahoe slid into the front corner and bumper of Romero's car.

32.    When the Tahoe contacted the bumper of Officer Romero's vehicle, Atman began firing his .40 caliber handgun at Archambault.

33.    Once Officer Atman began shooting at Archambault, Officer Romero also started shooting.

34.    Officers Atman and Romero shot at Archambault through the passenger side door of the Tahoe as it was reversing perpendicular to and past the officers.

35.    The Tahoe continued past Romero's vehicle, and the officers continued to fire bullets at Archambault through the front windshield of the Tahoe as it was driving away from the officers.

36.    Officers Atman and Romero together fired fifteen (15) rounds at Archambault.

37.    Multiple bullets shot by Officers Atman and Romero struck Archambault.

38.    One bullet went through the left side of Archambault's chest.

39.    After the officers shot Archambault, the Tahoe continued down a steep embankment and crashed into a ravine.

40.    Archambault was partially ejected from the Tahoe, but he was alive when Officers Atman and Romero went to check on him.

41.    Officers Atman and Romero did not render any medical aid to Archambault.

42.    Archambault died waiting for help.

43.    An autopsy performed on Archambault determined that the manner of his death was a homicide.

5

44.     The primary factor of Archambault's cause of death was the gunshot sustained to the left side of his chest which passed through his left lung.

45.     As a consequence of Defendants' violation of Archambault's federal civil rights under 42 U.S.C. § 1983 and the Fourth, Fifth, and Fourteenth Amendments, Plaintiff Charlee Archambault was mentally and emotionally injured and damaged as a proximate result of Archambault's wrongful death, including but not limited to: loss of familial relations, decedent's society, comfort, protection, companionship, love, affection, solace, and moral support.

46.     Plaintiff Estate of Jacob Archambault, by and through Charlee Archambault, the personal representative of Archambault's estate, is entitled to recover wrongful death damages as well as funeral and burial expenses.

47.     Plaintiff, Estate of Jacob Archambault, by and through Charlee Archambault, the personal representative of Archambault's estate, pursuant to her right of survivorship for the pain and suffering he endured as a result of the violation of his civil rights.

48.     In the event that Plaintiff is the prevailing party, Plaintiff is entitled to an award of attorneys' fees and costs under 42 U.S.C. §§ 1983, 1985-86, and 1988.

## COUNT ONE: VIOLATION OF CONSTITUTIONALLY PROTECTED RIGHTS
### 42 U.S.C.A. § 1983 (*BIVENS* ACTION)
(ESTATE OF JACOB ARCHAMBAULT V. JOSHUA ATMAN AND JAY ROMERO SR.)

Plaintiff realleges the information set forth in the paragraphs above and further alleges:

40.     This claim for relief is brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 288, 397, 91 S.Ct. 1999 29 L.Ed.2d 619

(1971), for violations of Archambeault's rights under the Fourth and Fifth Amendments of the United States Constitution, when Defendants Atman and Romero used excessive, unreasonable, and unwarranted force during the pursuit.

41.    At all times herein, Defendants Atman and Romero acted under color and pretense of federal statutes, ordinances, regulations, policies, practices, customs, and uses of the United States of America.

42.    On January 27, 2019, Archambault had the right under the Fourth Amendment to be free from unreasonable search and seizure of his person.

43.    On January 27, 2019, Archambault possessed the rights guaranteed by the Fifth Amendment to not be deprived of life and liberty without due process of law, including but not limited to, the right not to suffer physical harm from persons acting under the color of law that is intentionally or wantonly inflicted or which is accomplished with deliberate, reckless or callous indifference to his constitutional rights.

44.    On January 27, 2019, Archambault had the rights guaranteed by the Equal Protection Clause and the Due Process Clause of the Fifth Amendment of the United States Constitution.

45.    On January 27, 2019, Defendants Atman and Romero, while acting under the color of federal law as a United States Employee, intentionally deprived Archambault of his Fourth Amendment right to be free from unreasonable seizures by subjecting him to excessive force when they fired fifteen (15) rounds which resulted in the Archambault's death.

46.    On January 27, 2019, Defendants Atman and Romero, while acting under color of federal law as a United States Federal Employee, intentionally violated

7

Archambault's rights guaranteed by the Fifth Amendment to not be deprived of life and liberty without Due Process of Law, including but not limited to, the right not to suffer physical harm from persons acting under color of the law that is intentionally or wantonly inflicted or which is accomplished with deliberate, reckless or callous indifference to his constitutional rights.

49.    Defendants Atman and Romero, by using such unreasonable force, caused injury and damage to Archambault, ultimately causing fatal injuries.

50.    At the time of the incident, Archambault was not engaged in any assaultive behavior toward Defendants or any other persons.

51.    Defendants' shooting of Archambault was completely unjustified by any action of Archambault and said shooting constituted an unreasonable and excessive use of force in violation of Archambault's guaranteed rights under the Fourteenth Amendment to the United States Constitution, which protects pretrial detainees from punishment.

52.    Defendants Atman and Romero acted specifically and with the intent to deprive Archambault of the following rights and privileges guaranteed under the United States Constitution:

      a.    Freedom from unreasonable seizures, in the form of use of excessive force;

      b.    Freedom from deprivation of liberty without Due Process of Law;

      c.    Freedom from punishment prior to conviction for any crime; and

      d.    Equal protection of the laws.

53.    After the shooting, Archambault suffered pain from the injuries and eventually died from the injuries. Archambault suffered severe physical, emotional, and psychological

damage as a result of the conduct of Defendants Atman, Romero, and the Rosebud Sioux Tribe.

54.    Defendants Atman and Romero subjected Archambault to the aforementioned deprivations by either actual malice or deliberate indifference and disregard to Archambault's civil rights.

55.    As a direct and proximate result of the aforementioned acts of Defendants Atman and Romero, Archambault suffered general damages in the form of conscious pain and suffering and loss of value of life, and now Plaintiff seeks compensatory damages against Defendants in their individual capacity.

### COUNT TWO: WRONGFUL DEATH – 42 U.S.C. § 1983
(ESTATE OF JACOB ARCHAMBAULT v. JOSHUA ATMAN & JAY ROMERO SR.)

Plaintiff realleges the information set forth in the paragraphs above and further alleges:

54.    Defendants acted under color of law by shooting and killing Archambault without lawful justification and subjecting Archambault to excessive force which deprived Archambault of certain constitutionally protected rights, which include, but are not limited to:

    a.    The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

    b.    The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth Amendments to the United States Constitution;

    c. The right to be free from the use of excessive force by persons acting under the color of law, here police officers, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

56. As a direct and proximate result of the aforementioned acts of Defendants Atman and Romero, Archambault suffered general damages in the form of conscious pain and suffering and loss of value of life and seeks compensatory damages against Defendants in their individual capacity.

## COUNT THREE: VIOLATION OF CIVIL RIGHTS TO FAMILIAL RELATIONSHIP – 42 U.S.C. § 1983)
### (CHARLEE ARCHAMBAULT v. JOSHUA ATMAN & JAY ROMERO, SR.)

Plaintiff realleges the information set forth in the paragraphs above and further alleges:

57. Archambault was protected by rights guaranteed under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

58. Defendants Atman and Romero, acting under the color of law, and without due process of law, deprived Plaintiff of her right to a familial relationship by seizing decedent through the use of unreasonable, unjustified, and deadly force or violence which caused the death of Plaintiff's son.

59. The violation of Archambault's constitutionally protected rights by the Defendants is the direct and proximate cause of Plaintiff's loss of a familial relationship with her son.

60.     Plaintiff is entitled to and seeks damages against Defendants in the form of general compensatory damages for the loss caused by Defendants along with funeral and burial expenses incurred.

## COUNT FOUR: VIOLATION OF CIVIL RIGHTS– 42 U.S.C. § 1983)
### (ESTATE OF JACOB ARCHAMBAULT v. JOSHUA ATMAN & JAY ROMERO, SR.)

Plaintiff realleges the information set forth in the paragraphs above and further alleges:

61.     Jacob Archambault was protected by rights guaranteed under the Fourth, and Fourteenth Amendments to the United States Constitution.

62.     Defendants violated and deprived Archambault of his protected rights when they unjustifiably shot and killed him.

63.     Archambault was forced to endure significant conscious pain and suffering because of Defendant's actions before his death.

64.     Archambault could not file an action before his death.

65.     Plaintiff, Charlee Archambault, as the mother of Archambeault and personal representative of the Estate of Jacob Archambault claims damages for the conscious pain and suffering incurred by Jacob Archambault, as provided for under 42 U.S.C. § 1983.

66.     Plaintiff is entitled to monetary damages on behalf of Archambault for the suffered severe physical, emotional, and psychological damage incurred as a result of the conduct of Defendants Atman and Romero.

WHEREFORE, Plaintiff respectfully prays that this Court:

a.     Award general and compensatory damages to Plaintiff, and against the Defendants, jointly and severally, in an amount to be determined at trial;

11

b.     For special damages, including but not limited to, past, present, and future wage loss, income and support, medical expense and other special damages to be determined in accordance with the proof provided;

c.     For funeral and burial expenses;

d.     For punitive and exemplary damages against Defendants, jointly and severally.

c.     Award Plaintiff's costs and attorney's fees, pre-judgment and post-judgment interest, all other damages allowed by law, and any such further relief the Court deems just and equitable.

Respectfully submitted this 24th day of January 2022

/s/ John Hinrichs
John Hinrichs  SD#3166
Heidepriem, Purtell, Siegel, Hinrichs
101 West 69th Street, Ste. 105A
Sioux Falls, South Dakota 57108
P: (605) 252-9277
F: (605) 679-4379
John@HPSlawfirm.com
*Attorney for Plaintiff*

*/s/ Jeffrey R. Beck*
Jeffrey R. Beck  SD #4244
BECK LAW, PROF. LLC
221 S. Phillips Ave., Ste. 204
Sioux Falls, South Dakota 57104
P: (605) 359-0135
F: (605) 275.0628
Becklaw@outlook.com
*Attorney for Plaintiff*

## DEMAND FOR JURY TRIAL

Pursuant to the provisions of Federal Rule of Civil Procedure 38, as to causes of action against Defendants Joshua Atman, Jay Romero Sr., and Unknown Supervisory Personnel of the United States, and pursuant to *Bivens* and its progeny, Plaintiff hereby demands a trial by jury of any issue triable of right by jury.

12

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

CHARLEE ARCHAMBAULT individually and as PERSONAL REPRESENTATIVE OF THE ESTATE OF JACOB ARCHAMBAULT

**(b)** County of Residence of First Listed Plaintiff    Todd County, SD
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

John Hinrichs, 101 W. 69th St., Ste 105, Sioux Falls, SD 57108
Jeffrey R. Beck - 221 S. Phillips Ave, Ste 204, Sioux Falls, SD 57104

## DEFENDANTS

The United States of America, Joshua Atman, Jay Romero Sr., and Unknown Supervisory Personnel of the United States

County of Residence of First Listed Defendant    Todd County, SD
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☒ 2  U.S. Government Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 850 Securities/Commodities/ Exchange ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation - Transfer

☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983

Brief description of cause:
Officers' violation of constitutional rights resulted in Jacob Archambault's wrongful death

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE
01/21/2022

SIGNATURE OF ATTORNEY OF RECORD
John Hinrichs

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____